# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Chase Carmen Hunter,<br><br>Plaintiff,<br><br>v.<br><br>Lucas Frederickson, individually and in his official capacity as a community service officer for the Centennial Lakes Police Department; and B. Jacobson, individually and in his official capacity as a detective for the Centennial Lakes Police Department,<br><br>Defendants. | Civ. No. 15-3346 (ADM/BRT)<br><br>**REPORT AND RECOMMENDATION** |

BECKY R. THORSON, United States Magistrate Judge.

Plaintiff Chase Carmen Hunter commenced this action by raising claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; the Sherman Antitrust Act, 15 U.S.C. §§ 1-7; 42 U.S.C. §§ 1983-1986; federal criminal law; and state common law against the Defendants in this action.[1]  Hunter did not pay the filing fee for this action, but instead applied to proceed *in forma pauperis* ("IFP"). (*See*

---

[1]     Hunter has filed other litigation over the past year in federal courts across the country. *See Hunter v. Hirsig,* – Fed. App'x – , 2015 WL 3853322 (10th Cir. June 23, 2015); *Hunter v. Roventini,* – Fed. App'x – , 2015 WL 3483102 (4th Cir. June 3, 2015); *In re Hunter*, 600 Fed. App'x 126 (4th Cir. 2015); *In re Hunter*, 588 Fed. App'x 232 (4th Cir. 2014); *Hunter v. Obama*, 584 Fed. App'x 7 (D.C. Cir. 2014); *Hunter v. Boron*, No. 14-3324, 2015 WL 5076965 (C.D. Ill. Aug. 27, 2015); *Hunter v. Price*, No. A-15-CV-405-LY, 2015 WL 2454118 (W.D. Tex. May 21, 2015); *Hunter v. Kalmanson*, No. 5:14-CV-410-OC-22PRL, 2014 WL 5179502 (M.D. Fla. Oct. 14, 2014).

Doc. No. 2.) That IFP application must be considered before any other action may be taken in this matter.

After review of the IFP application, this Court concludes that Hunter qualifies financially for IFP status. However, an IFP application will be denied, and the action will be dismissed, when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Hunter alleges that, in June 2015, a dog owned by an individual referred to in the Complaint as "CS" was involved in an "accident." (Doc. No. 1, Compl. ¶ 2.) It appears—although this is never made explicit in the Complaint—that the dog owned by CS had been designated a "dangerous dog" for purposes of Minn. Stat. § 347.51, perhaps

as a result of the "accident." (*See* Compl. ¶ 13.) Under Minnesota law, an owner must register such a dog, and in order to register such a dog, the owner must procure liability insurance for the dog. (*See id.*); Minn. Stat. § 347.54. Many insurance companies, however, refuse to offer such coverage. Thus, some owners of dangerous dogs are unable to comply with the requirement to procure insurance, resulting in the seizure of the dog by animal control. (*See* Compl. ¶ 13.) (Hunter contends that this is unconstitutional, *see id.*, although she does not bring a claim directly challenging the constitutionality of these Minnesota statutes, does not clearly allege why these statutes are unconstitutional, and does not contend that any court has ever held these provisions to be unconstitutional.)

Hunter is an insurance agent. CS sought the required pet insurance from Hunter after the accident. In turn, Hunter procured the policy desired by CS from a second insurance agent.[2] Centennial Lakes officer Lucas Frederickson, who was sent to investigate the accident involving CS's dog, did not believe the insurance policy sold by Hunter was valid.[3] (*See* Compl. ¶ 4.) Frederickson turned the case over to B. Jacobson, a Centennial Lakes detective. Jacobson informed the second agent that CS's dog had been

---

[2] Hunter refers to this policy as the "second insurance policy." (Compl. ¶ 5.) The "first" insurance policy seems to be a pre-existing homeowners policy that Hunter was not responsible for procuring. (*Id.* ¶ 3.)

[3] Hunter alleges that Frederickson harassed CS in many ways after the accident, including by telling her that "If your son keeps looking at me, I will take your dog right now," and that he would euthanize CS's dog if she did not procure the necessary insurance. (*See* Compl. ¶ 4.) Hunter is not an attorney and therefore cannot bring claims on behalf of CS. *See* 28 U.S.C. § 1654. Accordingly, this Court will only consider the claims raised by Hunter on her own behalf.

involved in an "accident" and provided her with the citation and police report from that accident. (*Id.*) This allegedly caused the insurance policy procured by Hunter to be canceled, as the second agent had not been provided with information regarding the accident prior to issuing the policy. (*Id.*) Jacobson blamed Hunter for the failure of the other insurance agent to receive the relevant information regarding the dog and told CS that Hunter "had been 'dishonest' and was a 'fraud.'" (*Id.* ¶¶ 7-8.) Frederickson also called Hunter a "fraud." (*Id.* ¶ 3.) Hunter issued CS a refund for the insurance policy. (*Id.* ¶ 16.)

Hunter appears to concede that Defendants' actions were undertaken in accordance with Minn. Stat. §§ 347.51 & 347.54. She claims, however, that the officers "know" these provisions are unconstitutional, as they do not make an exception for owners of dangerous dogs who are unable to procure the required insurance due to unwillingness on the part of insurance companies to offer such insurance. (*See* Compl. ¶ 16.) (Hunter does not explain how the Defendants could "know" such a thing, as those provisions have never been struck down as invalid or even called into question by any court.) Thus, claims Hunter, Defendants actions were entirely unsupported by law.[4]

Based on these allegations, Hunter brings fourteen claims for relief against Frederickson and Jacobson. These claims can be grouped into five broad categories: (1) antitrust violations; (2) RICO claims; (3) federal civil-rights claims; (4) federal criminal claims; and (5) state-law claims. This Court will examine those claims in turn.

---

[4] There are many inconsistencies and omissions in Hunter's account. This Court has done its best to summarize the narrative provided in the Complaint.

First, Hunter seeks to bring claims (Counts I and II) under the Sherman Antitrust Act, 15 U.S.C. §§ 1-2. Hunter's basis for *antitrust* claims against the officers is not obvious; apparently she believes the officers' alleged conduct constitutes an illegal combination or conspiracy in restraint of her trade as an insurance agent. (*See* Compl. ¶ 16.) If so, these are wholly frivolous claims. Hunter has not alleged price-fixing, or denial of access to the market, or any of the other hallmarks of behavior made illegal by § 1. Nor can Hunter allege that Defendants have monopolized or attempted to monopolize the pet-insurance market, as would be required under § 2. *Cf. Milsap v. U.S. Dep't of HUD*, No. 4:89-CV-0635, 1990 WL 157516, at *7 (D. Minn. Oct. 18, 1990) ("While plaintiffs do allege they have been denied employment and contracting opportunities, their claims are simply insufficient to support an antitrust claim of any sort."). Further, Hunter's alleged injuries (loss of the insurance premium paid by CS; potential for negative publicity) are not injuries to *competition*; they are merely personal injuries suffered from allegedly tortious behavior. That is insufficient to state a federal antitrust claim. *See Razorback Ready Mix Concrete Co., Inc. v. Weaver*, 761 F.2d 484, 488 (8th Cir. 1985) ("The question presented is whether [the plaintiff] has alleged an injury to competition as distinguished from injury to itself.").

Second, Hunter alleges (in Counts III, IV, and XIV) that Defendants have violated RICO through violations of 18 U.S.C. § 1033, 18 U.S.C. § 873, and "conspiracies to interfere in Hunter's business." (Compl. ¶ 84.) These claims, too, are frivolous. As an initial matter, none of § 1033, § 873, and "conspiracies" (written broadly) are predicate offenses for which RICO actions may be maintained. *See* 18 U.S.C. § 1961(1) (defining

"racketeering activity"). Beyond that, though, Hunter has not adequately alleged that Defendants violated any of these provisions. Section 1033 prohibits the making of false statements and embezzlement by individuals "engaged in the business of insurance"; there is no allegation in the Complaint that either Frederickson or Jacobson have ever been "engaged in the business of insurance." They are, after all, police officers, not insurance agents. Section 873 prohibits blackmail; there is no allegation in the Complaint that Frederickson or Jacobson ever "under a threat of informing, or as a consideration for not informing . . . demand[ed] or receive[ed] any money or other valuable thing" from Hunter or anyone else. And Hunter has not pleaded with particularity the existence of any illegal conspiracy between Frederickson or Jacobson, as opposed to actions taken individually by those officers. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) ("A RICO claim must be pleaded with particularity under Rule 9(b).").

Moreover, RICO "is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Id.* (quotation omitted). Hunter has not alleged any "long-term, habitual criminal activity" by Frederickson and Jacobson; she has, at most, alleged a single episode of behavior that she believes to be illegal. Nor has Hunter alleged the existence of any enterprise between the Defendants "separate from the predicate acts alleged," as is required under RICO. *See Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, No. 14-cv-2651 (SRN/HB), 2015 WL 632187, at *16 (D. Minn. Feb. 13, 2015); *accord Illinois Farmers Ins. Co. v. Mobile Diagnostic Imaging, Inc.*, No. 13-CV-2820 (PJS/TNL), 2014 WL 4104789, at *13-15 (D. Minn. Aug. 19, 2014). For all these reasons, Hunter's RICO claims must fail.

Third, Hunter brings federal civil-rights claims (in Counts V, VI, and VII) under 42 U.S.C. §§ 1983, 1985, and 1986. Nowhere in the Complaint does Hunter allege facts showing that her federal constitutional rights were violated by the Defendants, and her allegations of violations of federal laws (the Sherman Antitrust Act, RICO, and federal criminal laws) fail for reasons explained elsewhere in this Report and Recommendation. Without factual allegations showing that Hunter was deprived of a right secured by the Constitution and the laws of the United States, Hunter cannot succeed on her claims under § 1983. *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012). Nor has Hunter alleged that she is a member of a protected class, or that Defendants actions were motivated by animus towards a protected class to which she might belong. *See Federer v. Gephardt*, 363 F.3d 754, 757-58 (8th Cir. 2004) (setting forth elements for claims under § 1985(3)); *Gatlin ex rel. estate of Gatlin v. Gatlin*, 362 F.3d 1089, 1095 (8th Cir. 2004) ("A section 1986 claim must be predicated upon a valid section 1985 claim."). These claims, too, should be dismissed.

Fourth, Hunter alleges (in Counts VIII, IX, X, and XI) that Defendants violated various federal criminal laws (18 U.S.C. §§ 3, 4, 241, & 242). But none of those statutes has been interpreted as providing a private right of action. *See United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under § 241, even though the statute allows federal authorities to pursue criminal charges."); *Houck v. Heaton*, 515 Fed. App'x 725, 725 (10th Cir. 2013) (per curiam) ("The district court dismissed Houck's complaint for failure to state a claim because 18 U.S.C. § 242 provides no private right of action. The district court is

correct."); *Hilow v. Rome City School Dist.*, No. 6:14-CV-288, 2015 WL 893050, at *8 (N.D.N.Y. Mar. 2, 2015) (finding no private right of action under 18 U.S.C. §§ 3 & 4, among other federal criminal statutes). "The statutes here are simple criminal statutes; they do not expressly or by implication deputize anyone to enforce those statutes." *Hilow*, 2015 WL 893050, at *8. These claims are frivolous.

Fifth, Hunter brings claims (in Counts XII and XIII) for fraud and tortious interference. Under Minnesota law,

> [t]he elements of a claim of fraud are: (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance.

*Angeles v. Medtronic, Inc.*, 863 N.W.2d 404, 422 (Minn. Ct. App. 2015). The basis for Hunter's fraud claim appears to stem from Defendants' statements to CS that Hunter was "dishonest" and a "fraud," (Compl. ¶ 3, 7), but Hunter has not plausibly alleged that those statements were made "with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false," *Angeles*, 863 N.W.2d at 422. Indeed, according to Hunter's own account, Defendants made these statements after investigating the legitimacy of the insurance policy issued by Hunter. (*See* Compl. ¶ 5.) In other words, on Hunter's own account, the allegedly fraudulent statements were not made with knowledge of the falsity or without any grounding in fact

whatsoever. Under these circumstances, Hunter has not pleaded fraudulent behavior by Defendants.

Hunter's tortious interference claim fares no better. "A cause of action for tortious interference with contract has five elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages." *Sysdyne Corp. v. Rousslang*, 860 N.W.2d 347, 351 (Minn. 2015) (quotation omitted). Hunter's claim is pleaded only in conclusory terms that are not entitled to the assumption of truth. (*See* Compl. ¶¶ 79-82.) Moreover, the claim fails at two points. First, Hunter has not adequately alleged the *breach* of a contract (as opposed to the lawful cancelation of a contract), which is required under Minnesota law. *Sysdyne*, 860 N.W.2d at 351. Second, Hunter has not plausibly alleged that the interference with CS's insurance contract was "without justification." *See id.* Jacobson was authorized to investigate the veracity of CS's insurance contract under Minn. Stat. §§ 347.51 & 347.54 and therefore acted justifiably under the circumstances. (*See* Compl. ¶ 5.)[5]

---

[5] Even if Hunter has adequately pleaded a cause of action, the Defendants are likely protected by qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 134 S.Ct. 3, 4 (2015) (quotations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 5 (quotations omitted); *see also Podruch v. State Dep't of Public Safety*, 674 N.W.2d 252, 254 (Minn. Ct. App. 2004) ("The doctrine of official immunity protects from personal liability a public official charged by law with duties that call for the exercise of judgment or discretion unless the official is guilty of a willful or malicious wrong."). The entire thrust of Hunter's Complaint is that Frederickson and Jacobson

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. This action be **SUMMARILY DISMISSED** under 28 U.S.C. § 1915(e)(2)(B).

2. Plaintiff Chase Carmen Hunter's application to proceed *in forma pauperis* (Doc. No. 2) be **DENIED**.

Dated: October 7, 2015                     *s/Becky R. Thorson*
                                            Becky R. Thorson
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

---

should have known Minn Stat. §§ 347.51 & 347.54 are unconstitutional, even though no court has ever so held. Without the assumption that these statutes are unconstitutional, Hunter's entire Complaint collapses; all she is left with is an accusation that Defendants acted in accordance with Minnesota law. Defendants' judgment that those statutes are constitutional is reasonable, and actions taken pursuant to those statutes could not have been willfully or maliciously wrong.